## CITY OF INDIANAPOLIS *v.* HUFFER.

CITY.—*Street Improvements.—Consequential Injuries to Private Property.*— An incorporated city is not ordinarily liable for consequential injuries to private property resulting from the grading and improvement of its streets, if, in making such improvements, reasonable skill and care be used to avoid the injuries. The skill and care which is incumbent relates as well to the plan as to the execution of the work—in the case of a sewer, to its capacity, as well as to the mechanism in its construction.

SAME.—*Damages.—Measure of.*—In an action against a city to recover damages resulting from the overflow by water several times of the plaintiff's lot and dwelling thereon, used by him as a residence for his family, such overflows being caused by an insufficient and carelessly constructed sewer built by the city, the jury made up the amount of damages by ascertaining the losses suffered by the plaintiff by reason of injury to his realty, garden crops, and personal property such as household goods and family supplies, and adding thereto a certain sum on account of the decrease in the rental value of the premises during the period, caused by the backwater. *Held,* that the damages were excessive.

EVIDENCE.—*Opinion of Witness not an Expert.*—Any witness, not an expert, who knows the facts personally, may give an opinion in a matter requiring skill, stating also the facts on which he bases his opinion.

APPEAL from the Marion Common Pleas.

FRAZER, J.—This was a suit against the city of Indianapolis to recover damages resulting from an overflow of the plaintiff's lot and dwelling thereon by water, caused by an insufficient and carelessly constructed sewer erected by the

city.    The answer, though in six paragraphs, amounted only to the general denial.    The plaintiff had a verdict and judgment for $980.05.    A number of questions are presented.

The case shown by the evidence was, that in consequence of street improvements made by the city, the natural surface drainage of a considerable district was so obstructed that a sewer was rendered necessary to pass the water; that the city constructed a sewer of capacity wholly insufficient for the purpose, and that this insufficiency was perfectly obvious to any person of common sense at the time of its construction.    As a consequence, the plaintiff's premises were several times submerged by ordinary freshets, and his property and household goods greatly injured.    He used the place as a residence for his family, except when occasionally driven out by the water.    The sewer was constructed when the lot was unimproved, after which he purchased it, and erected a dwelling upon it.    It appears by answers to interrogatories that the jury made up the amount of damages by ascertaining the losses suffered by the plaintiff by reason of injury to his realty, garden crops, and personal property such as household goods and family supplies, and adding thereto the sum of $384 on account of the decrease in the rental value of the premises during the period, caused by the backwater.

It seems very clear that this mode of ascertaining the damages could only result in an assessment which would be excessive.    It compensates the plaintiff for all the injuries suffered by him, and then adds to that sum what he would have lost, if, instead of dwelling upon the property himself, he had let it to a tenant.    But if the landlord should agree to make good to the tenant all damages caused by the overflow, would the rental value then be so greatly lessened by the liability to overflows?    Did not the liability of the tenant's household goods to be thus damaged contribute to depreciate the rental value of the property?    These questions are easily answered.    Obviously, the damages assessed

were excessive, and a new trial should have been granted.

An incorporated city is not ordinarily liable for consequential injuries to private property, resulting from the grading and improvement of its streets, if, in the making of such improvements, reasonable skill and care be used to avoid the injuries. The skill and care which is incumbent relates as well to the capacity of the sewer as to the mere mechanism in its construction—as well to its plan as to its execution. *Logansport* v. *Wright*, 25 Ind. 512, and authorities there cited. *The Rochester White Lead Co.* v. *Rochester*, 3 Comst. 463, is especially in point. Indeed, the liability of a city in such cases rests on exactly the same foundation as that of a natural person. An infallible judgment is not required to avoid liability, but the erection of a sewer (rendered necessary by street improvements) of such incapacity that every sane man knows in advance that it will not afford any relief from the consequences of obstruction to the natural drainage caused by the filling of the street, would be dispensing with the use of common sense, and by no means consistent with that reasonable care which the law requires. It would, indeed, be carelessness most gross and wanton—not merely an error of judgment, but a failure to exercise judgment at all.

The action of the court below in allowing witnesses, not experts, to give their opinion as to the capacity of the sewer is questioned. The rule is, that any witness, not an expert, who knows the facts personally, may give an opinion in a matter requiring skill, stating also the facts upon which he bases that opinion. But in this case it could scarcely be called an opinion which the witnesses gave, but a fact. They had seen that the sewer would not pass the water in time of floods. It did not require an expert, with such a fact within his own knowledge, to say that the sewer was too small.

Reversed, with costs; cause remanded for a new trial.

*B. K. Elliott*, for appellant.

*J. T. Dye* and *A. C. Harris*, for appellee.