BRYAN DONOHUE *v.* The MAYOR, &c., OF NEW YORK.

Although no action can be maintained against a municipal corporation for damages resulting from an act done by it in its sovereign or judicial character, yet where the act, *e. g.*, the construction of a sewer,—is performed so negligently that the plaintiff is injured by reason of such negligence, he may recover his damages.

Thus where the defendant, in constructing a sewer which intersected a natural stream of water running through the plaintiff's land, neglected to provide egress for the stream, by reason of which the water was dammed back upon the plaintiff's land, causing injury to his premises,—*Held*, that the defendant was liable in damages.

APPEAL by the defendants from a judgment of trial term. The action was brought to recover damages for injuries sustained by the plaintiff under the following circumstances : The plaintiff occupied certain premises on Seventy-fifth street as a dwelling-house and gardens, which were situated below the grade of the adjoining streets. A stream of water ran near the premises and through a culvert constructed under Second avenue. The corporation directed its contractor to construct a sewer which intersected the culvert in Second avenue. In constructing the sewer, the flow of water through the culvert was necessarily stopped, and the water overflowing on the plaintiff's premises, caused the damages, for which he sued. It appeared that there could have been provision made for the egress of the water during the construction of the sewer.

The action was tried before Barrett, J., without a jury, May 13, 1868, and the Judge found as follows :

*First*—As matter of fact; that in or about the month of August, 1865, the plaintiff suffered damage in the destruction of his garden by an overflow of water thereon, to the amount of $300 ; that such damage was caused by the construction of a sewer through Seventy-fourth street, New York city, under the direction of the defendants, and particularly by defendants neglecting to provide egress for a stream of water which ran through said grounds, and which was dammed back upon plaintiff's grounds by said sewer.

That  the  defendants  were  guilty  of  gross  negligence,  in causing  said  sewer  to  be  constructed  without  also  providing  for the  egress  of  the  water  of  said  stream.

*Second*—As  matter  of  law ;  that  the  defendants  have  been guilty  of  gross  negligence  in  the  premises,  and  are  legally responsible  to  the  plaintiff  for  his  damages  sustained  as  afore-said,  and  that  the  plaintiff  is  entitled  to  a  judgment  against said  defendants,  for  the  said  sum  of  $300,  besides  costs.

From  this  judgment  defendants  appealed  to  the  general term.

*Richard  O'Gorman,*  for  appellants,  cited  *The  Governor and  Company*  v.  *Meredith,*  4  Durnf.  and  East,  795 ;  *Hall*  v. *Smith,*  2  Bing.  156 ;  *Fulton*  v.  *Clark,*  6  Taunton ;  *Wilson* v.  *The  Mayor,*  1  Denio,  595 ;  *Radcliff* v.  *The  Mayor,*  4  N.  Y. 195 ;  *Mills*  v.  *The  City  of  Brooklyn,*  32  N.  Y.  496.

*John  Mapes,*  for  respondent,  cited  *Kavanagh*  v.  *City  of Brooklyn,*  38  Barb.  232 ;  *Rochester  White  Lead  Co.*  v.  *Rochester,*  3  N.  Y.  463 ;  *Conrad*  v.  *Ithaca,*  16  N.  Y.  159 ;  *West* v. *Brockport,* 16  *Id.*  161 ;  *Storrs*  v.  *Utica,*  17  *Id.*  104 ;  *Barton*  v. *Syracuse,*  36  *Id.*  54 ;  *Lockwood*  v.  *Mayor,*  &c.,  of  *N.  Y.,*  2 Hilton,  66.

BY  THE  COURT.—BRADY,  J.—The  defendants  determined  to construct,  and  did  construct,  a  sewer  in  Seventy-fourth  street. In  the  course  of  the  work,  a  natural  stream  which  ran  from  the Central  Park  to  Avenue  A,  and  thence  to  the  river,  was dammed  up  by  the  contractor  in  order  to  complete  the  sewer, as  required  by  his  agreement  with  the  defendants.    Before  the sewer  was  built,  the  waters  of  the  stream  found  outlets  at  dif-ferent  places.    The  stream  ran  across  the  Second  avenue, through  an  archway,  and  the  line  of  it  as  compared  with  the line  of the  sewer  was  a  direct  line.    It  was  three  feet  lower,  how-ever,  than  the  sewer  where  it  entered  upon  the  north  side  of Seventy-fourth  street.    The  effect  of  laying  the  sewer  was  to create  a  pond  which  continued  to  exist  up  to  the  time  this action  was  tried,  and  the  result  to  the  plaintiff  was  the  inunda-

tion of his land and the loss of his crops. The judge presiding at trial term found that the plaintiff suffered damage which was caused by the construction of the sewer already mentioned, and particularly by defendants neglecting to provide egress for the stream of water also, already mentioned, which was dammed back upon plaintiff's grounds by the sewer. The judge also found that the defendants were guilty of gross negligence, in fact and in law, in causing the sewer to be constructed without also providing for the egress of the water of the stream, and awarded the damages which he thought the plaintiff had sustained. It was not disputed upon the trial that a culvert could have been built below the line of the sewer, which would have carried off the water. Upon these facts can this action be maintained? Were the defendants bound to provide for the egress of the water of a natural stream, the interruption of the course of which injuriously affected the property of the plaintiff? The cases bearing upon this subject seem to establish these rules:

1. That when the act done by a municipal corporation is one of sovereignty, or judicial in its character, no action can be maintained against them for its results.

2. Where the act done becomes ministerial, in consequence of its performance having been determined upon by the sovereign power of the corporation, no action can be maintained against them for damages sustained unless the thing done is negligently or unskillfully done; and,

3. When an act is performed, and it is one which imposes future obligations upon the corporation, or in consequence of its having been done, future obligations of a ministerial character are assumed, such as to keep a sewer in repair, an action may be maintained for damages consequent upon the omission to perform that duty (*Bailey* v. *Mayor, &c.*, 3 Hill, 531; *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y. 463; *Radcliff* v. *Mayor, &c.*, 4 N. Y. 195; *Mills* v. *City of Brooklyn*, 32 N. Y. 489; *Wilson* v. *Mayor, &c.*, 1 Denio, 595; *Barton* v. *City of Syracuse*, 36 N. Y. 54; *Conrad* v. *Trustees of the Village of Ithaca*, 16 N. Y. 158). There are also other actions for omissions of duty clearly imposed upon corporations

to which it is not considered necessary here to refer in detail. The defendants had the power to direct the construction of the sewer, its dimensions, general character, and precise locality. They did so, and the contractor proceeded to perform the contract he had made. They did not assail his fidelity, but averred that "if any damage was caused the plaintiff, it resulted necessarily from making the improvement, and that the defendants were, therefore, not liable. It cannot be questioned that the defendants had the power to do whatever was necessary to accomplish the object in view, *salus populi est suprema lex*, and therefore had the right to dam up the waters of the stream as long as it was necessary to do so in order to complete the sewer, but if it were not necessary, and it could have been avoided by ordinary care, the defendants were bound to exercise such care. To that extent, however, and to that extent only, they were free from restraint or liability. They had not the right to permanently arrest the course of a natural stream, and as the result thereof to throw back its waters upon the plaintiff's land, unless it was inevitable. It would, in such a case, necessarily result from making the improvement, and perhaps justify the defence assumed in this case. There is nothing, however, in this case to show that any such necessity existed. It appears, on the contrary, that the waters could have been carried off, as already stated, and the omission to make a culvert for that purpose—thus restoring egress—was negligence, and negligence in the performance of a ministerial act. And it may be added here, with great propriety, that the obligation to make the culvert was increased from the fact that neither the plaintiff nor the owner of the land would have the right to build it under the sewer without the permission of the defendants. The cases relating to water courses do not furnish any illustrations of the precise responsibilities of corporations in a case like this. They relate to water courses interrupted, or interfered with, or obstructed, on which mill dams are erected, and the waters of which are employed for purposes of commerce or irrigation. They do not advise us of the power which corporations possess in reference to natural streams in the performance of public duties, which may be re-

garded as public benefits.  The general principle, however, of care and skill in the exercise of municipal authority applies with equal force to this case as to others in which negligence and want of skill forms the basis of liability.  In the case of *Banon & Craig* v. *Corporation of Baltimore*, 2 American Jurist, 203 (No. 4), a well considered case, the defendants were held liable for having, in the exercise of their municipal powers, diverted certain streams from their natural channels to a point near the plaintiffs' wharf, on navigable water, within the harbor and city of Baltimore, to which point a large deposit of sand and earth was carried down by the streams, and by which the value of the wharf was injuriously affected.  The decision seems to rest upon the doctrine that the corporation had no power to devote private property to public use, or to deprive an individual of his property without indemnity ; and Ch. J. Archer said, " Has there been such a deprivation here ?  There has, certainly, been what is equivalent to it.  The plaintiff has his land, it is true, but he has been deprived of the profits growing out of its tenure, and that by the act of the defendants."  And again, " if the corporation had before the right to divert water courses and natural drains, to subserve the public benefit, that is, its own benefit, it will still possess it, subject to the just limitation, that it pays for the deprivation, whether immediate or consequential.  These views are in accord with the result arrived at on this appeal, and commend themselves as just interpretations of the relations existing between municipal corporations and the citizen subject to their power.

The facts and circumstances of this action differ from those in *Wilson* v. *The Mayor, &c.*, and *Radcliff* v. *The Mayor &c.* (*supra*).  The injuries on those cases were incidental to the proper exercise of the power possessed, and were the natural and necessary consequences of making the improvement, and making it properly and without negligence or unskillfulness.  The defendants having, in those cases, employed their authority rightfully in sovereignty and ministerially, the plaintiff's injuries were embraced in the class to which the maxim *damnum absque injuria* is applied.  The judgment against them in this action was properly rendered, and they must respond.  The

negligence charged upon them brings them within the rule as to the liability of corporations declared by the authorities referred to, and renders the conclusion stated imperative.

Judgment affirmed.