Roll *et al. v.* The City of Indianapolis.

·ROLL ET AL. *v.* THE CITY OF INDIANAPOLIS.

CITY.—*Sewer.*—*Insufficiency of Public Sewer for Private Use.*—A city, incorporated under the general law for the incorporation of cities in this State, by its contractor, and under and in accordance with an ordinance of the common council, constructed a sewer along a street of said city, one-half of the cost of which was assessed against and paid by the owners of the real estate abutting upon said street. Said sewer not being of sufficient capacity to carry off the sewerage that was drained into it during hard rains of ordinary occurrence, one of said owners, under and in compliance with a permit obtained by him of said city in accordance with an ordinance thereof, tapped said sewer and connected therewith his premises abutting on said street, paying said city a certain sum for said privilege. By reason of said insufficiency in the capacity of the sewer, the basement of said owner's house was subject to frequent overflows from the backwater of said sewer through the connecting pipe, and by such overflows said premises were injured, which injury could be avoided only by the closing and disuse of said connecting pipe, thereby diminishing the rental value of said premises.

*Held*, that the tenant of said owner, during whose tenancy such injury occurred, and who, at the time he became a tenant, had no knowledge of such insufficiency of the capacity of the sewer, had no cause of action against the city.

SAME.—*Liability of Municipal Corporation.*—Municipal corporations are not liable to individuals for judicial errors, although private rights may be injured thereby, or for the exercise of their ordaining powers, however mistaken or corrupt their policy may be, and although private injury may result therefrom. They are liable to individuals for wrongful acts or derelictions of duty in the exercise of their ministerial powers, whenever injury to private rights is the direct and natural consequence; and, when liable, they are liable the same as individuals would be under the same circumstances.

PLEADING.—*Contributory Negligence.*—An allegation in a complaint that a wrong complained of was done without the fault or negligence of the plaintiff is not necessary in a case of trespass, and where the wrong complained of was committed by some positive, affirmative act; it is necessary only where the issue is solely a question of negligence.

From the Marion Civil Circuit Court.

*D. V. Burns*, for appellants.

*C. Byfield*, for appellee.

BIDDLE, J.—The complaint in this case states the following substantial facts:

That the appellants are partners, doing business under the firm name and style of Roll & Morris; that they are, and for the year last past have been, in the possession, under a lease from Isaac H. Roll, of lot No. 2, in square No. 67, in the city of Indianapolis, on which is situated a certain building, containing a well-finished basement story, which lot and building abuts on South Illinois street, and has been occupied by the plaintiffs for the year last past as a store-room, in which they carry on a wholesale and retail carpet, wall-paper, and upholstering business; that the surface drainage on Illinois street and in front of said building is, and was at the time of the happening of the grievances hereinafter mentioned, sufficient to carry off all the water that fell on the same; that on the —— day of ——, 18—, the city of Indianapolis, by her common council, caused to be established on said Illinois street, and immediately in front of the premises so occupied by plaintiffs, a sewer of small dimensions, to wit, of the dimensions of eighteen inches in diameter, and at the same time assessed one-half of the cost of the same against the owners of the real estate abutting thereon, which amount was duly paid by the owner of the property so occupied by the plaintiffs, thus giving him, or the occupants thereof, the right to tap said sewer for the purpose of carrying away from said premises all proper matter of sewerage; that, in pursuance of said right, plaintiffs did, on the —— day of ——, 187—, cause said sewer to be tapped in a proper and skilful manner, and under the direction of the agents of said defendant, immediately in front of their said premises, for the purpose of making the proper connections therewith for the conveying away of the sewerage matter from said premises. They further aver that said sewer is sufficient to carry away all proper matter of sewerage from the premises adjoining thereto, and which have the right to use the same; but that the same is wholly inadequate for any other purpose, and especially for conveying off the surface water from said street. Yet, notwithstanding the insufficient capacity of said sewer, the said

defendant, heretofore, to wit, on the —— day of ——, 187—, by her common council, caused to be established on said South Illinois street catch-basins, by means of which all the water from the surface of said street in the vicinity thereof is let into said sewer, which catch-basins the defendant has ever since maintained, and still wrongfully maintains; that by reason thereof said sewer is filled to overflowing during every ordinary rainfall, and does overflow and flood the plaintiffs' said premises on every such occasion, through the connecting pipes hereinbefore mentioned, thus materially interfering with the comfortable enjoyment of their said premises; that they have sustained damages in the sum of one thousand dollars by reason of said wrongs; that the pavement between the area wall and the front wall of their basement has been repeatedly washed up, so that the same has had to be relaid at great cost; that they have been deprived of the use of their said basement story by reason of said wrongs; and that the same is of great rental value, to wit, twelve hundred dollars per year. Prayer, that the defendant be enjoined from letting the surface water into said sewer, that the catch-basins be taken out, and for damages.

Subsequently there was a supplemental complaint. A motion to strike out and a demurrer to the complaint were filed and ruled upon, but no exceptions were reserved or errors assigned thereon by the plaintiffs, and they therefore need not be further noticed at this point. Answer by general denial and a special paragraph. The latter was struck out on motion, and exception taken, but no error is assigned upon the ruling. Jury waived, trial and special finding by the court, which, at the request of the appellants, was stated, with the conclusions of law thereon, as follows:

"That the city of Indianapolis, pursuant to an ordinance of the common council, caused to be constructed by her contractor, John W. Dodd, a sewer, under and along the line of South Illinois street, from Washington street on the north to South street on the south, of eighteen inches interior diam-

eter, for the purpose of conducting off the surface drainage and house drainage through such connections as might be made with the city's permission, duly obtained; that said sewer was constructed in all respects in accordance with the requirements of the ordinance and the stipulations of the contract for its construction, dated on the 16th day of July, 1870, and was accepted by the city; that one-half of the cost of construction of the same was assessed against, and collected from, the abutting property owners; that, at the time of the construction of said sewer, Isaac H. Roll was the owner of the premises described in the complaint, which abutted upon said street, and that he was assessed, with others, for said construction, and paid his assessment; that said sewer, as constructed, was not of sufficient capacity to carry off the sewerage that was drained into it during hard rains of ordinary occurrence; that said Isaac H. Roll, in August, 1873, applied to and obtained from the proper city authorities a permit to tap said sewer with a connecting pipe from his said premises, pursuant to the provisions of another ordinance of said city regulating the making of such connections, and was taxed and paid said city the sum of ten dollars for the privilege of doing so, and under said permit did tap said sewer with an eight-inch pipe, running from said premises and entering said sewer and discharging into the same; that the permit granted to said Roll, and under which he made such connection, contained this proviso: 'Provided, however, and the permit is hereby granted only on this express condition, that the owners and tenants for whose benefit such drain and connections are made, and each succeeding tenant, in consideration of the privileges hereby granted and hereafter enjoyed, shall hold the city of Indianapolis harmless from any loss or damage that may in any wise result from, or be occasioned by, the construction, use or existence of such tap or connection.' And, further, said permit had printed on the back certain 'rules for laying drains,' among which, numbered in order 8, was this: 'Privy vaults shall not be connected with the sewers.'

" The ordinance of said city, of 1871, regulating the laying and connecting with said sewer, provided that 'no person shall drain into any sewer, or drain the contents of any * * privy vault, unless express permission is granted by the city council, who shall charge for the privilege thus granted any sum not exceeding one hundred dollars,' and enacted a penalty for the violation of this provision; that said Roll ran his said connecting pipe from said sewer into the area vault under the sidewalk in front of said premises, and then connected it with the water-closet or privy of said premises, discharging the sewerage therefrom into said connecting pipe and sewer; he also discharged into it the water from part of the roof and the water-pipes for the water supplied to said building by the water-works. The same ordinance of the city forbids connections with the sewers otherwise than by drain-pipes, which should be six inches in diameter, except in special cases it be otherwise ordered by a unanimous vote of the council; and Roll's connecting pipe was eight inches in diameter, and was laid without such special permission; such difference in the size of the pipe did not contribute materially to the injury complained of. In other respects the connection was properly made.

" The plaintiffs, as partners in the carpet and wall-paper business, became the occupants of said premises, as tenants of said Roll, in January, 1874; that, at the time they became such tenants, they had no knowledge of the insufficiency of said sewer to discharge the water drained into it from the street; that, by reason of such insufficiency of said sewer, and by reason of the said connecting pipe, the basement of the plaintiffs' store is liable to frequent overflowing from the backwater of said sewer through said connecting pipe; that said danger could be avoided by the stopping and disuse of said connecting pipe, which would, however, deprive the plaintiffs of the use of said water-closet, and of the benefits of said sewer; and there is no other accommodation of the kind about the premises, nor any place to put one; that the rental value of said basement room with the

water-closet, and without danger of overflow, would be one thousand dollars per annum; as it is now, it is worth five hundred dollars per annum. During the time the plaintiffs have occupied the premises, they have sustained fifty dollars actual damages, occasioned by the back flow of water.

" And the court finds, as a conclusion of law, that on the foregoing state of facts the plaintiffs have no cause of action against the city of Indianapolis; to which conclusion of law the appellants at the time excepted."

The plaintiffs moved the court " for judgment on the special finding of the facts herein, for the reason that all the facts found by the court, which are embraced within the issues joined in the cause, entitle them thereto;" which motion was overruled, and exception taken at the time. Thereupon the plaintiffs moved for a new trial, and filed the following causes therefor:

1. The finding of the court is contrary to law.

2. The finding of the court is contrary to the evidence, and is not sustained thereby.

The motion was overruled, to which ruling the plaintiffs at the time excepted. Judgment. Appeal.

The errors assigned in this court are:

1. Said court erred in overruling appellants' motion for a judgment on the special finding of the facts.

2. The said court erred in its conclusions of law, drawn from the facts found, *i. e.*, its conclusions of law upon the special finding.

3. The said court erred in overruling appellants' motion for a new trial, and in rendering judgment for appellee.

The appellee, as a cross error, assigns the overruling of the demurrer to the complaint.

The question presented in this case is one of intrinsic difficulty. The authorities may possibly be reconciled, but they are not entirely harmonious. No doubt the discrepancies sometimes arise out of the differences in the powers granted by municipal charters, which are not always distinguished in the decisions, leaving us in danger of being mis-

led by propositions which seem general, when they are applicable only to given municipalities. There are certain principles, however, maintained so uniformly that we think they may be held as established:

1. That municipal corporations are not liable to individuals for judicial errors, although private rights may be injured thereby.

2. They are not liable to individuals for the exercise of their ordaining powers, however mistaken, or even corrupt, their policy may be, and although private injuries may result therefrom.

3. They are liable to individuals for wrongful acts, or derelictions of duty, in the exercise of their ministerial acts, whenever injury to private rights is the direct and natural consequence.

4. When liable, they are liable the same as individuals would be under the same circumstances. But it is often difficult to clearly distinguish between their judicial, ordaining and ministerial acts, as these powers and duties are frequently blended, and quite impossible to derive much light from the analogy to personal liabilities, because individuals are seldom clothed with the powers, or charged with the duties, which belong to municipal corporations.

The case of *The Mayor, etc., of The City of New York* v. *Furze* was as follows:

" Furze brought an action on the case in the court below against the mayor, aldermen and commonalty of the city of New York, averring in his declaration, that he was the owner and occupant of a building situated upon Pearl street in said city, wherein he carried on the business of a baker and confectioner; that there were certain basins, culverts, and sewers in said street, designed for conducting and carrying off the water running in and upon the same, which basins, culverts, and sewers the defendants were bound to keep in proper condition and repair; that the said basins, culverts and sewers became filled up and obstructed, so that they would not carry off the water, etc.: yet the defendants,

well knowing, etc., refused and neglected to remove said obstructions and keep said basins, culverts and sewers in proper condition and repair; by reason whereof the premises of the plaintiff were overflowed, and his building, fixtures, etc., together with a large quantity of flour, sugar, etc., then upon said premises, were damaged, etc., and the plaintiff deprived of the use of his building, etc."

Plea, the general issue, jury trial, verdict for plaintiff, and judgment; which was affirmed by the Supreme Court.   3 Hill, 612.

In the case of *Wilson* v. *The Mayor, etc., of the City of New York*, wherein it was alleged that the plaintiff was the owner of a certain house and four lots at the corner of Fortieth street and Seventh avenue, and that defendants had so carelessly and negligently raised and graded said avenue and street as to obstruct the flowing water from her premises, turned the water and caused it to run upon her premises, the defendants having omitted to construct or make any sewer, gutter, or drain along said street or avenue, etc., it was held the plaintiff could not recover.   The case of *The Mayor, etc.,* v. *Furze*, above cited, was explained and limited.   1 Den. 595.

The case of *The Rochester White Lead Co.* v. *The City of Rochester* was brought for damages to the plaintiff's factory and a quantity of white lead, occasioned by the insufficient and unskilful construction of a culvert built by the defendant, which was sufficient to carry off the natural stream of water, but insufficient when a great fall of rain and the melting of snow occurred.   In this case, *The Mayor, etc.,* v. *Furze, supra*, was cited with approval, and the city of Rochester held liable.   3 Comstock, 463.

In the case of *Dermont* v. *Mayor, etc., of Detroit*, 4 Mich. 435, which was an action on the case for injury done to merchandise stowed in the plaintiff's cellar, by reason of the water from one of the public sewers of the city of Detroit flowing back through his private drain into the cellar, it was held that a municipal corporation is not liable, at the

suit of an individual, for damages arising from the insufficiency, or defective construction, of a public sewer, where such damages result directly to the party injured, from his use of it for his private convenience, and that the payment of a sum annually, by an individual, for the privilege of draining into a public sewer, is evidence of a license only, and not an undertaking and guaranty, on the part of the city, to furnish ample drainage for the premises of such person. In this case WILLSON, J., remarks:

"The powers granted to municipal corporations for the laying out and making of highways, and for opening and grading streets, and the construction of sewers, involve the exercise of discretion on the part of the municipal authorities, and should be employed for the benefit of the public at large, and not for the private convenience or advantage of individuals; nor are the officers of a municipal corporation justified in the exercise of those powers, except in reference to the public demands. The sewers are built as well for sanitary purposes as for drainage for the benefit and advantage of the public at large; and the city owes no legal duty or obligation to individuals in their construction, maintenance or repair. As was well said on the argument, the sewers are built by general tax; not for any particular individual, but for the general welfare; not with a view, perhaps, of any perfect good to any one, but the greatest good to the greatest number."

In this case, the sewer was built by a general tax; in the case before us, one-half of the cost of the sewer was paid by the owners of the abutting property. What difference this distinction should make, if any, in the decision of the case, the learned judge did not remark; but it is a distinction not to be forgotten in considering the two cases together.

*Carr* v. *The Northern Liberties*, 35 Penn. St. 324. This action was brought to recover damages sustained by the plaintiffs by reason of the flooding of their premises, at the southeast corner of Fifth and Poplar streets, in consequence, as it was alleged, of the neglect of the defendants to provide

sufficient inlets to their culverts to carry off the water at that point, the improper, unskilful, and insufficient manner in which the culvert was originally constructed, and the negligent manner in which it was subsequently kept. A recovery below was denied.

On error, LOWRIE, C. J., in delivering the opinion of the court, reasons as follows:

"A very large portion of all such drainage is by means of mere gutters, and most of our towns have nothing else; and yet everywhere this means is inadequate for protecting cellars, in some localities, against the flooding which long and heavy rains and the sudden melting of deep snow occasion. To make gutters that would protect against these, would often require that whole streets should be converted into gutters, and thus made, in a measure, impassable as streets. Lots on low ground, and cellars and low floors, are naturally subject to be flooded, and to save them from all risk of this, would require drainage regulations that could not be endured. * * * And if people who choose to build houses and cellars in places where they are exposed to floods, are entitled to damages for being flooded, then, of course, people having gardens, coal-yards, lumber-yards, or even vacant lots, must also be protected. * * Here it becomes manifest how careful we must be that courts and juries do not encroach upon the functions committed to other public officers. It belongs to the province of town councils to direct the drainage of our towns, according to the best of their means and discretion, and we cannot directly or indirectly control them in either."

The case was affirmed in the Supreme Court.

In the case of *Barton* v. *The City of Syracuse,* 37 Barb. 292, the plaintiff brought his action to recover damages to property stored in his cellar, caused by the flow of water thrown from the common sewer of the city through the drain of the plaintiff. In delivering the opinion of the court, ALLEN, J., says:

"It is assumed by the counsel for the defendant that the

sewer is the exclusive property of the city, designed and intended to be used only for the carrying off the water from the street, and that which would otherwise pass over the surface and in the gutters. * * But sewers are constructed mainly in reference to a more thorough drainage than can be obtained in any other way, not only of the streets, but of the adjoining lots, and with a view to health, as well as the more convenient enjoyment of the premises drained. In large and populous cities a wise system of sewerage is indispensable to life and health; for in no other way can provision be made for receiving and conducting away the surplus waters and impurities, which, if suffered to remain, would cause disease and pestilence. In no other way than by means of common sewers constructed by the city can cellars and basements be drained and made fit for use. And if the public cannot use them for the purpose of drainage, they will not accomplish the end for which they are designed."

In this case, the question also arose of the right of the plaintiff to put in and connect his private drain with the public sewer. A city ordinance provided, "that each and every person who shall dig in any street, for any purpose, either to connect with a sewer, or water or gas-pipes, shall first serve a notice in writing on the clerk of the city, to the effect that he or she desires to dig in the street, giving the location and name of its owner, that the clerk may keep a register of the same. A neglect to serve such notice shall subject the person offending to a penalty of not·less than two nor more than twenty-five dollars." The plaintiff did not give such notice when he put in his private drain; but the court held that the want of such notice did not make the digging in the street, nor the connection with the sewer, unlawful, as the penalty was not imposed for making the connection, but simply for not giving the notice, and the connection, not being prohibited, could not be classed among acts, which, being prohibited, and therefore unlawful, denied the plaintiff an action against a wrong-doer. The plaintiff

had judgment, and the case went to the Court of Appeals, where it was affirmed. 36 N. Y. 54.

It appeared in the case of *Barry* v. *City of Lowell,* that a public sewer had been built through the street upon which the plaintiff's house was situated, which was not laid deep enough to drain the plaintiff's cellar, and no drain led from the cellar to the sewer. There was a cesspool opposite to the plaintiff's house, which was frequently obstructed by dirt and gravel, and in winter by snow and ice, which prevented the water from passing through the same, and the water in such cases flowed over into the plaintiff's cellar; though when the sewer and cesspool were free from obstruction, the water would all pass through them. A verdict was taken for the plaintiff by consent, and the case reported for the determination of the whole court. On review, the reasoning of the court was expressed as follows:

" Since the plaintiff was not required to conform his drainage to that which the city had provided for public purposes, and had in fact never made use in that way of the common sewer which they had constructed, he had a right to prevent the overflow of water from it on to his own land by erecting such obstructions there as were necessary for that purpose. But if he omitted to do so, and sustained damage in consequence of the failure of the defendants to keep their own works in good order or in due repair, he can maintain no action therefor, because none is provided for by statute, and because by the use of lawful means he might have prevented the injury."

The verdict for plaintiff was set aside, and judgment rendered for defendant. 8 Allen, 127.

In Kansas it has been held, that "after a city has constructed a sewer or drain, for the purpose of carrying off surface water, it may, in its discretion, wholly abandon or discontinue the same, and never make any further use of it; and where the city does not leave individuals in any worse condition by such abandonment or discontinuance than they would be if such sewer or drain had never been

made, the city will not be liable for any injury to individuals caused by the flow of surface water." *City of Atchison* v. *Challiss,* 9 Kansas, 603.

In the city of Toronto, Canada, the plaintiff gave notice to the committee of the council forming the board of public works, that he wished a drain made for the purpose of draining his cellar, and paid the sum demanded. The drain was constructed under the superintendence of the city engineer, by the contractors with the city, but was so unskilfully made that it would not carry off the water, and in times of flood the water and filth from the main sewer flowed back through the drain into the plaintiff's cellar, putting him to much inconvenience. *Held,* that an action would lie against the corporation for the damages. But in the city of Toronto the corporation takes upon itself the construction of drains required to lead from the houses into the main sewers, and keeps them under police regulations; and it appears, also, that it draws a tax therefrom; all of which, doubtless, form material elements in its liability for the improper construction of the sewer, or for not keeping it in repair. *Reeves* v. *The City of Toronto,* 21 U. C. Q. B. 157.

The general principles governing the liability of municipal corporations for injuries to private rights may be found in the following cases in our reports: *Ross* v. *The City of Madison,* 1 Ind. 281; *The City of Madison* v. *Ross,* 3 Ind. 236; *The City of Vincennes* v. *Richards,* 23 Ind. 381; *The City of Logansport* v. *Wright,* 25 Ind. 512; *Stackhouse* v. *The City of Lafayette,* 26 Ind. 17; *The City of Indianapolis* v. *Miller,* 27 Ind. 394; *Brinkmeyer* v. *The City of Evansville,* 29 Ind. 187; *City of Indianapolis* v. *Huffer,* 30 Ind. 235; *The City of Columbus* v. *The Hydraulic Woollen Mills Co.,* 33 Ind. 435; *The City of Indianapolis* v. *Lawyer,* 38 Ind. 348; *The City of Lafayette* v. *Blood,* 40 Ind. 62.

The following decisions throw light, more or less directly, upon the question under consideration, and may be consulted with advantage: *Commissioners of Kensington* v. *Wood,* 10 Penn. St. 93; *Creal* v. *The City of Keokuk,* 4

Greene, Iowa, 47; *City Council of Montgomery* v. *Gilmer,* 33 Ala.116; *Flagg* v. *City of Worcester,* 13 Gray, 601; *Cotes* v. *The City of Davenport,* 9 Iowa, 227; *Munn* v. *The Mayor, etc., of Pittsburgh,* 40 Penn. St. 364; *Child* v. *The City of Boston,* 4 Allen, 41; *Mills* v. *The City of Brooklyn,* 32 N. Y. 489: *Donohue* v. *The Mayor of New York,* 3 Daly, 65; *Emery* v. *The City of Lowell,* 104 Mass. 13; *Ellis* v. *Iowa City,* 29 Iowa, 229; *Russell* v. *The City of Burlington,* 30 Iowa, 262; *Judge* v. *The City of Meriden,* 38 Conn. 90; *Grant* v. *The City of Erie,* 69 Penn. St. 420; *City of McGregor* v. *Boyle,* 34 Iowa, 268.

The appellee, under the assignment of the cross error, insists that the complaint of appellants is insufficient, because it nowhere alleges that the wrongs complained of were done without the fault or negligence of the appellants. Such an allegation is necessary only in cases where the issue is solely a question of negligence. In cases of trespass, and where the wrong complained of is committed by some positive, affirmative act, the negation of fault or negligence on the part of the plaintiff is not necessary.

In this case the appellee is charged with the wrongful establishment of an insufficient sewer, and certain catch-basins, and improperly turning certain drainage into them, whereby the appellants were injured in their property. There is no question of negligence involved in the issue; it is unnecessary, therefore, for the appellants to allege that they are without fault or negligence. We are of the opinion that the complaint is sufficient.

According to the general principles which govern the powers and enforce the duties of municipal corporations, and on a full review of the authorities, we are of opinion that the finding of the court below does not show a cause of action against the appellee.

The appellants in their brief do not urge the insufficiency of the evidence to sustain the finding, and we do not examine that question.

The judgment is affirmed, with costs.

ON PETITION FOR A REHEARING.

BIDDLE, J.—The appellants make the following points in their petition for a rehearing:

1. That this court held the complaint good, and the court below found the complaint to be true. That the ordinance stipulated "that the owner of the premises, and those holding under him, should hold the city harmless by reason of any damages which might accrue by reason of parties tapping the sewer." That the conclusion of law of the court below was based on this proviso in the ordinance, by reason of which the appellants could not recover; and that this court did not decide that question.

It is true that the finding of the court below covered the ground taken by the complaint, but it did not find all the averments contained therein, as alleged, to be true, by any means; and we can look only to the finding, not the averments of the complaint. There is nothing in the record to inform us upon what ground the court below based its conclusion of law favorable to the city. It simply found, "as a conclusion of law, that on the foregoing state of facts the plaintiffs have no cause of action against the city of Indianapolis." We did not decide whether the city was protected by the proviso in the ordinance or not, because we had not been convinced by the finding of the court below that the city had caused any private injury to the appellants, for which it was liable. It was quite useless to decide the question of protection before the wrong from which the city was to be protected had been established.

2. It is urged in the petition that the evidence sustains the complaint, and, the complaint being sufficient, a new trial should have been granted.

The question whether the evidence proves the complaint or not is not before us. The true question as to the evidence is, does it sustain the finding? The counsel for appellants did not, either in their written briefs or oral

argument, show us wherein, nor for what reason, the evi-
dence did not sustain the finding.   We must therefore con-
clude that it did, for the presumptions are with the court
below.

3.   The appellants cite the case of *The City of Indianapo-
lis* v. *Huffer*, 30 Ind. 235, against our opinion in this case,
and quote the following extract:

" The skill and care which is incumbent relates as well to
the capacity of the sewer as to the mere mechanism in its
construction, as well to its plan as to its execution." This
remark relates to consequential injuries to private rights
which flow from the public use of a sewer.   In the case we
are considering, the complaint against the city is for not
constructing a sewer sufficiently large to accommodate,
besides its public use, the private drain of the appellants.
It is not shown that the appellants have been injured by the
insufficiency of the sewer for public use.   Indeed, by the
finding of the court, quite the contrary appears.

4.   In view of the importance of the case, its volumi-
nous record, and the numerous questions involved, the appel-
lants desired to have their case presented orally.   Their
desire was granted, the argument on their behalf heard
attentively, and carefully considered.   In the main, the
authorities produced were the same as those we have cited
in support of our opinion, and we do not perceive that the
grounds on which it rests have been disturbed.   They may
be briefly recapitulated as follows:

1.   There was no obligation to private individuals resting
upon the city of Indianapolis to construct the sewer com-
plained of at all, and no liability to private persons would
be incurred by refusing to do so.

2.   The construction of the sewer, or not, was a question
for the legislative or ordaining power of the city to decide,
and one which the courts cannot revise, even though the
decision was erroneous.

3.   In constructing the sewer, public interests properly

controlled, and not private rights, though they should not be injured thereby.

4. Having constructed the sewer, its insufficiency for public use did not, of itself, give a private remedy to the appellants, simply because it would not accommodate their private drain. The city was not bound to construct the sewer for the private advantage of any person.

5. It was optional with the appellants to tap the public sewer, or not, with their private drain, according to the terms offered them by the ordinance. The sewer was constructed, its size and capacity to do its work, or not, were apparent to be seen by all persons, before the appellants exercised their optional right. Their act was voluntary; they were not bound to accept the terms of the ordinance.

The finding of the court shows that by a disuse of their private drain all the injury complained of will be avoided. It would seem, then, that the city, instead of causing a private injury to the appellants by the public use of the sewer, has simply failed to provide the appellants with the private advantage of draining their cellar. Without their private drain, the appellants stand with the general public on the same footing of equality, and this is all they have a right to demand.

The petition is overruled.