THE CITY OF INDIANAPOLIS *v.* THE INDIANAPOLIS GAS-LIGHT & COKE COMPANY.

CITIES.—*Power to Contract for Gas.—Statute Construed.—Constitutional Law.—Obligation of Contract.*—Under clause 28 of section 53 of the general act for the incorporation of cities, 1 R. S. 1876, p. 291, a city incorporated under said act has power, with respect to the lighting of its streets, public buildings, etc., to contract with a gas company upon that subject, and may exercise such power, within the limits of its franchise, according to its own discretion. Such a contract, when made, must be regarded as made by such city in the exercise of its power to contract, and not in the exercise of its power to legislate, although the power to make the contract be authorized by an ordinance. And when, by the terms of such a contract, the city is not restricted in any respect from the legitimate exercise of its public power touching the subject-matter thereof, but expressly reserves its administrative authority to keep the posts, lamps and burners in good repair, if the company should fail to do so ; and also reserves the right to test the quality of the gas furnished by such company and the capacity of the burners at all times ; and is not restricted from extending its streets, establishing an additional number of lamps, obtaining gas from other sources or establishing its own gas-works, as the public interests may require ; such contract, not being a restriction upon its legislative power, nor fraudulent, nor against public policy, is valid and binding upon such city, may be enforced in the same manner as the contract of a person or a business corporation, and can not be repealed, impaired or changed by the city, by ordinance or otherwise.

From the Marion Superior Court.

*R. O. Hawkins, J. A. Henry, S. Claypool, H. C. Newcomb* and *W. A. Ketcham,* for appellant.

*B. Harrison, C. C. Hines, W. H. H. Miller, C. Baker, T. A. Hendricks, O. B. Hord* and *A. W. Hendricks,* for appellee.

BIDDLE, J.—The following is the statement of the case. It is mainly taken from the opinion of HOLMAN, J., in the court below :

The complaint in this cause alleges, in substance, that on the 22d day of July, 1876, the City of Indianapolis and the plaintiff entered into a contract, in due form of law, whereby the latter agreed to furnish gas, of a quality and kind specified in the 3d section of an ordinance of the city, enacted March 19th, 1866, for the supply of all the street lamps, city offices, engine houses, council chamber, tunnels, bridges, station houses, and all other places where gas was required for the use of the city in her corporate capacity, in consideration of an agreed compensation ; that the contract was to be in full force and operation for the term of five years from its date, and a further term of five years, if the city so elected ; that, among other provisions, it contained the following :  " It is further stipulated and agreed, that nothing in this contract shall alter, modify or suspend the provisions of the contract at this time existing between the said party of the first part (the company) and the said city of Indianapolis, as evidenced by the ordinance (of March 19th, 1866, and which was for a term of twenty years), except so far as may be necessary to give effect to the provisions of this contract, and when this contract shall terminate, either by the expiration of the time limited, or by the failure or refusal of the city to perform its part thereof, then the said contract of March 19th, 1866, shall stand and continue for the unexpired term thereof, to be the contract between the parties hereto,   *   *   *   in all respects as though this contract had never been made."

It was also stipulated between the parties, that, if the gas company failed to keep the street lamps and posts clean and in repair, the city should cause them to be cleaned and repaired and deduct the cost from any sum

of money due to the gas company from the city; and also that the city should have the right to deduct, from any amount due to the company, fifteen cents for each lamp for each night that it was not lighted and kept lighted during the time required by the time-table; also, that the city should at all times have the right to test the quality of the gas furnished by the company, and the capacity of the burners on the street lamps.

It is averred that, during the months of June and July, 1878, a controversy arose between the parties, as to the validity of the contract of July 22d, 1876, the plaintiff insisting that the contract was in all respects binding and obligatory on the parties thereto, the defendant denying that the contract was of binding obligation, and claiming the right on behalf of the city, by her mayor and common council, at all times to regulate and change the manner of lighting said city, if such should be deemed for the public interest, and denying that said contract was of any binding obligation, except at the will of said city authorities in their discretion as to the public interest; and, by reason of said controversy, the streets and public grounds of said city were liable to be left unlighted; but, notwithstanding, the plaintiff continued to furnish gas and perform its agreements, until the 19th day of August following, when the parties entered into a provisional agreement, which was set out in full in the complaint. After reciting the execution of the contract of July 22d, 1876, that disputes had arisen respecting its validity, and that suit, involving this question, had been instituted by the company, it was provisionally agreed, for the term of one year from August 2d, 1878, that the company should proceed to furnish gas, etc., according to the terms specified, and that, after the expiration of the contract, the parties were to be remitted to whatever rights they had under the contract of July, 1876, and that the provisional agreement was not

to be construed as against the positions occupied by the parties respecting its validity, etc., nor as barring any right of action the company may have had for gas furnished, etc., on the 1st day of August, 1878. The contract concludes as follows :

"And, for the purpose of determining the right of said company to recover for said gas, and lighting and extinguishing the same, the following facts are agreed, to wit : That said city, on the 29th day of July, 1878, notified said gas company that she did not regard herself bound by said contract of July 22d, 1876, and elected to and did treat said contract as a nullity, and that the city would not pay said company for gas furnished, and for lighting, extinguishing, cleaning and repairing of lamps, under the terms of said contract, on and after the 1st day of August, 1878 ; and that she (the said city) claimed the right to regulate the lighting of the streets and alleys of said city, and of determining what amount of gas should be consumed by the city ; and that the city, by her common council and board of aldermen, had resolved and determined, on and after the said 1st day of August, 1878, not to light the streets and alleys of the city as and in the manner provided for in said contract, and resolved and determined upon other regulations for lighting the streets and alleys of said city. And, after said notice by the city, the said gas company, notwithstanding the objection of the city, proceeded to and did light all the lamps mentioned in said contract of July 22d, 1876 (2840 in number), in all things according to the terms of said contract of July 22d, 1876, on said 1st day of August, 1878. And it is agreed that the gas furnished, and the lighting and extinguishing the said lamps, on said 1st day of August, were and are of the value of two hundred and thirty dollars, according to the terms of the contract of July 22d, 1876. Now if, upon the facts aforesaid, the contract of July 22d,

1876, was a binding and operative obligation upon the city, on said 1st day of August, 1878, the said gas company shall have judgment for two hundred and thirty dollars ; otherwise the city shall recover her costs."

The complaint, in conclusion, alleges that the gas furnished, etc., on the 1st day of August, was, as measured by the prices and terms of the contract of July 22d, 1876, of the value of two hundred and thirty dollars, and judgment therefor was prayed.

To this complaint the defendant interposed a demurrer, assigning for reason that it did not. state facts sufficient to constitute a cause of action.

The demurrer was overruled, the defendant excepted, and refused to plead farther; whereupon the court rendered judgment for the plaintiff. The only question in the case therefore is thus presented upon demurrer to the complaint.

The following is the statutory authority upon which the contract is based :

The appellee was incorporated on the 12th day of February, 1851. Local Acts 1851, p. 295. The Legislature reserved no right either to repeal or amend the charter. The first section of the charter creates certain persons named, and their associates, a body corporate and politic, " with perpetual succession." The second section of the charter indicates the purpose for which the corporation was created, to wit : " To manufacture and sell gas, to be made from any or all the substances, or a combination thereof, from which inflammable gas is obtained, and used, for the purpose of lighting the City of Indianapolis or streets thereof, and any buildings, manufactories, public places, or houses therein contained, and to erect necessary works and apparatus for conducting gas in the streets or avenues of said city." The fifth section, after providing that the corporation may make by-laws, etc., not incon-

sistent with the constitution and laws of the United States, or the State of Indiana, provides: " Said company shall have the privilege of supplying the City of Indianapolis and its inhabitants with gas for the purpose of affording light, for the term of twenty years." The section then makes provision as to the duties of agents, etc., of the corporation, and their control, and concludes with the following proviso: " That nothing in this act shall be so construed as to grant to said Gas-Light and Coke Company the exclusive privilege of furnishing said city with gas, for the purposes within named."

The sixth section is as follows: " The said City of Indianapolis, in its corporate capacity, shall have power to contract with said company to furnish gas for the purpose of lighting the streets, engine houses, market-houses, or any public places or buildings, and may provide means to pay for the same in such manner as they may deem best," etc.

In the general law relating to cities, under which the City of Indianapolis is now incorporated, the fifty-third section, in enumerating the powers of cities, has the following: " *Twenty-eighth.* To construct and establish gas-works, or to regulate the establishment thereof by individuals or companies, or to regulate the lighting of streets, public grounds and buildings, and to provide, by ordinance, what part, if any, of the expense of lighting any street or alley shall be paid by the owners of lots fronting thereon, and in what manner the same shall be assessed and collected, and to make the same a lien upon real estate." 1 R. S. 1876, p. 291.

The city of Indianapolis, at the time the appellee was incorporated, was acting under its original charter granted in 1838. The question was mooted, rather than discussed, whether the city, by abandoning its original charter, and accepting its franchises under the general act for the in-

corporation of cities, did not forfeit its rights to contract with the Gas Company, as expressly conferred by this sixth section of the act incorporating the company. We do not examine this question particularly, as we are of the opinion that the city had ample authority, under the twenty-eighth clause of section 53 of the general act, as above quoted, to contract with the company concerning the subject-matter in controversy, and, having the power, might exercise it, according to its own discretion, within the limits of its franchise. There is not any doubt but the company had the power to contract with the city. We may thus safely conclude that the parties had the power to contract concerning the subject-matter.

But the appellant claims, that " to regulate the lighting of the streets is a legislative power which can not be delegated away, surrendered or restricted, by contracts or otherwise; and that the contract in question is a restriction upon that legislative power, and therefore invalid." This we understand to be the basis of the appellant's defence to the contract.

As to the power to contract:.

All persons may contract unless the power is denied by law, as in case of minority, coverture, imbecility, or other legal disability. No corporation can contract unless the power is granted by law. This power is generally granted to business corporations, as for banking, manufacturing, shipping; and such corporations generally have no legislative or governmental powers, except the power to make by-laws for their own government; they can not pass ordinances for the government of others. Municipal corporations, besides the power to contract, which is generally granted to them within certain limits, have legislative or governmental powers, by which they make by-laws to govern themselves, and pass ordinances to govern others, as the citizens of a town or city within their geographical

limits. This power to legislate within the authority delegated to them by law is distinct from the power to contract, although exercised by the same corporation. They can not, by contract, delegate or restrict their legislative power, nor can they, merely by their legislative power, make a contract. These two powers need not be confounded. The exercise of the legislative power requires the consent of no person except those who legislate; while it is impossible to make a contract without the consent of another, or others. We think, therefore, that, when the City of Indianapolis made the contract in question with the Gas-Light Company, it made it in the exercise of its power to contract, and not in the exercise of its power to legislate, although the power to make the contract was authorized by an ordinance; and, having the power to make a contract touching the subject-matter, it had the right to make it according to its own discretion as to its prudence or good policy, within the limits of its franchise. Nor can we see that the contract in the least restricts the legislative powers of the city, except that, as the sanctity of the contract is shielded by the constitution of the United States, it can not, in the exercise of its legislative power, impair its validity; for it would be a solecism to hold that a municipal corporation can impair the validity of a contract, when the State which created the corporation, by its most solemn acts, has no such power.

The counsel, upon both sides, who discussed the question before us, seemed to think that the authorities upon the question were seriously in conflict. This court had occasion to remark, in the case of *Roll* v. *The City of Indianapolis*, 52 Ind. 547, as follows:

" The question presented in this case is one of intrinsic difficulty. The authorities may possibly be reconciled, but they are not entirely harmonious. No doubt the discrepancies sometimes arise out of the differences in the powers

granted by municipal charters, which are not always distinguished in the decisions, thus leaving us in danger of being misled by propositions which seem general, when they are applicable only to given municipalities."

So we may well say in the present case. We do not think the authorities, upon the principles of construing the powers of municipal corporations, are in serious conflict. If all the charters were the same, we think the authorities would essentially harmonize. It is necessary, therefore, in examining the authorities, to be particular in ascertaining the premises in each case; when they are the same, the authorities will generally agree. They all agree, we believe, in the following propositions: That a municipality can not abridge its legislative power by contract, and that it can not impair a contract by its legislative power; that a municipality can not make a valid contract beyond its power to contract, and that a contract made within its power to contract is valid. So that when the powers granted are different, the conclusions must be different also. But the case of *Rittenhouse* v. *The Mayor & City Council of Baltimore*, 25 Md. 336, which seems to hold that the repeal of an ordinance authorizing a contract abrogates the contract, it must be admitted, can not be reconciled with the current of authorities. We have found no other case that does not hold upon that point directly the reverse; we therefore can not follow that case.

The case of *Garrison* v. *The City of Chicago*, 7 Bissell, 480, relied upon by the appellant's counsel, does not seem to us to support their views. That was upon a contract made by the gas company with the City of Chicago, to furnish the city with gas for ten years. At the time the contract was made, or rather at the time when a previous contract was extended, the charter of the city contained a provision that no contract should be made by the city involving any expense, unless an appropriation was previ-

ously made to meet it ; and the comptroller was required, in May of each year, to submit an estimate of the amount necessary to defray the expenses of the city for the current fiscal year. No such appropriation was previously made, and the court puts the case expressly on that ground, in the following words : " The question to be determined is whether there was a reasonable necessity on the part of the City Council to extend the contract in controversy here, and which will now be mentioned, for ten years from its date, there being no appropriation made commensurate with the obligations of the contract."

Here is a contract, not only without authority in the charter to make it, but made in violation of its express terms, which both parties were bound to know at the time they contracted. Of course such a contract was invalid. The extension of the contract already made, ten years beyond its term, is not different in principle from making a new one.

In the case of *Gale* v. *The Village of Kalamazoo*, 23 Mich. 344, Gale agreed to build a market-house for the village, which was to be put under the control of the authorities, the stalls to be rented as agreed upon between the parties, the rent of which was to be paid to Gale, the contract to run ten years, and be extended to any other definite time by agreement of the parties.

The village authorities were to appoint a manager of the market, and bound themselves that there should be no other market-house in the village, provided the one so built was large enough to accommodate the public, and also bound themselves to restrict the sale of marketing to that place, during market hours.

It is apparent, in this contract, that the village of Kalamazoo parted with its legislative and administrative power over the market-house, in several essential respects. In the language of COOLEY, J., " Not only was the marketing

to be confined to one locality, but the plaintiff was to have an unlimited right to control the occupation of the market-house through the power given him to determine the rents to be paid by the lessees. This vested in him a practical monopoly of the public market."

The vice of this contract lay, not in the agreement to have a market-house built, but in the fact that the public authorities had undertaken to part with their control over it when built, and place its management in the power of private speculation. This they could not do.

So, in the case of *City of Oakland* v. *Carpentier*, 13 Cal. 540, wherein the trustees pretended to convey to " Carpentier and his representatives the exclusive right and privilege of constructing wharfs, piers, and docks, at any point within the corporate limits of the town of Oakland, with the right of collecting wharfage and dockage as he might deem reasonable, upon certain conditions expressed in the ordinance." This contract was held to be invalid, because it parted with the public authority over the wharfs and docks, and left them to be controlled by private interest, and not because the " City of Oakland " had no power to contract for building wharfs and docks.

By the contract we are considering, the City of Indianapolis is not restricted in any respect from the legitimate exercise of its public powers touching the subject-matter of the contract, but expressly reserves its administrative authority to keep the posts, lamps and burners in good order and repair, if the Gas Company should fail to do so ; and also reserves the right to test the quality of the gas furnished by the company, and the capacity of the burners, at all times. We can not see wherein, by the contract, the city is restricted from extending its streets, establishing an additional number of lamps, obtaining gas from other sources, or establishing its own gas-works, as the public interests might require, and all this it can do with-

out violating its contract. No exclusive right is granted to the Gas Company.

A municipal corporation, not having either body, limbs, feet or hands, but being merely a legal entity, can not execute its own acts, nor administer its own affairs. To do this it must employ persons, other corporations, or agencies of some kind, and to employ them and agree to pay them is to make a contract; and if it could not make such contracts, and was not bound thereby, it could not carry on the purposes or attain the objects for which it was established. Its ordinances will not execute themselves; and to deny it the power to have them executed would be to render it useless and helpless. When it makes a contract within the scope of its power—not *ultra vires*—which is not against public policy, and not fraudulent, it must be enforced the same as the contract of a business corporation, or a person. Upon what is averred in the complaint, it is impossible for a court to say that the contract before us is open to any of these objections.

The authorities upon the question are too numerous to notice in detail, but we think their main current supports the views we have taken in this opinion; nor do we think that, upon principle, they are seriously conflicting. The apparent conflict arises from applying their language generally, when it was meant to apply only to some particular municipality. Dillon Municipal Corp., secs. 52, 55, 60, 61, 97, 114, 245, 250, 371, 372, 382, 394, 395, 547, 548; *The Evansville, Indianapolis and Cleveland Straight Line R. R. Co.* v. *The City of Evansville,* 15 Ind. 395; *Nelson* v. *The City of La Porte,* 33 Ind. 258; *The City of Indianapolis* v. *Bly,* 39 Ind. 373; *The City of Crawfordsville* v. *Hays,* 42 Ind. 200; *The State Board of Agriculture* v. *The Citizens Street R. W. Co.,* 47 Ind. 407; *The Board of Commissioners of Tippecanoe County* v. *Everett,* 51 Ind. 543; *Roll* v. *The City of Indianapolis,* 52 Ind. 547; *The San Francisco Gas Co.*

The City of Indianapolis *v.* The Indianapolis Gas-Light & Coke Company.

v. *The City of San Francisco*, 9 Cal. 453; *Davenport* v. *Inhabitants of Hallowell*, 10 Maine, 317 ; *Bailey* v. *The Mayor, etc., of the City of New York*, 3 Hill, 531 ; *Masterton* v. *The Mayor, etc., of the City of Brooklyn*, 7 Hill, 61 ; *Milhau* v. *Sharp*, 27 N. Y. 611; *The Richmond County Gas-Light Co.* v. *The Town of Middletown*, 59 N. Y. 228; *Devlin* v. *The Mayor, etc., of the City of New York*, 63 N. Y. 8 ; *Mayor and Council of Rome* v. *Cabot*, 28 Ga. 50; *Intendant and Town Council of Livingston* v. *Pippin*, 31 Ala. 542 ; *State of New York* v. *The Mayor, etc., of New York*, 3 Duer, 119 ; *Britton* v. *The Mayor, etc., of New York*, 21 How. Pr. 251 ; *Louisville City R. W. Co.* v. *City of Louisville*, 8 Bush, 415 ; *The Harlem Gas-Light Co.* v. *The Mayor, etc., of New York*, 33 N. Y. 309; *Illinois and St. Louis R. R. and Canal Co.* v. *City of St. Louis and the Pacific Elevator Co.*, 2 Dillon, 70 ; *The State of Ohio* v. *The Cincinnati Gas-Light and Coke Co.*, 18 Ohio State, 262 ; *Gall* v. *The City of Cincinnati*, 18 Ohio State, 563 ; *Minturn* v. *Larue*, 23 How. 435 ; *Memphis City* v. *Dean*, 8 Wal. 64; *Chicago* v. *Sheldon*, 9 Wal. 50 ; *Hitchcock* v. *Galveston*, 6 Otto, 341 ; *Edwards* v. *Kearzey*, 6 Otto, 595 ; *The People* v. *The Common Council of Detroit*, 28 Mich. 228; *Mayor, etc., of Jackson* v. *Bowman*, 39 Miss. 671 ; *Davenport Gas-Light and Coke Co.* v. *The City of Davenport*, 13 Iowa, 229 ; *State of Wisconsin* v. *Milwaukee Gas-Light Co.*, 29 Wis. 454; *The Norwich Gas-Light Co.* v. *The Norwich City Gas Co.*, 25 Conn. 19 ; *The Western Saving Fund Society of Philadelphia* v. *The City of Philadelphia*, 31 Pa. State, 175; *Philadelphia* v. *Fox*, 64 Pa. State, 169.

The judgment is affirmed, at the costs of the appellant.

ON PETITION FOR A REHEARING.

BIDDLE, J.—In stating the complaint in the above opinion, when first delivered, we included matter which both parties agree had been struck out as surplusage.

The City of Indianapolis *v.* The Indianapolis Gas-Light & Coke Company.

A motion to strike out parts of the complaint had been made below, but what parts nowhere appears in the record; besides, the record shows us that the motion was withdrawn, and does not show us what ruling, if any, was had upon it, nor what exception, if any, was taken to the ruling. We did not suppose, therefore, that any part of the complaint had been struck out. But the absence of what was struck out does not seem to us to affect the question decided in the least. It was wholly immaterial matter. As the complaint now stands, it sets out the contract counted upon, dated July 22d, 1876, and the averments in reference to the contract dated March 19th, 1866, also the provisional contract, made August 2d, 1878. The complaint also avers the performance of the contract of July 22d, 1876, on the part of plaintiff, and assigns the breaches on the part of the defendant by denying its validity and refusing payment under its terms, and shows the agreed statement of facts as to the amount of damages to be adjudged in the event that the contract is upheld. This presents the question of the validity or invalidity of the contract of July 22d, 1876, which is the sole question in the case, and the only one, as we understand the counsel on both sides, which they desire to have settled.

For the purpose of correcting the mistake of including immaterial matter in the complaint, which can not affect the case, it does not seem to us that a rehearing is necessary. The correction has already been made. There can be no doubt, we think, that the complaint, as it now stands, is sufficient, if the contract declared on is valid.

As to the validity of the contract, the question has been fully considered. We understand the case was elaborately argued in the court below. The opinion rendered there by Holman, J., is able and exhaustive. In this court, the counsel diligently collected the authorities touching the question involved, and in their oral arguments discussed

them thoroughly. We think we are as well advised in the case as it is possible to be. With all these advantages before us, and upon long and careful deliberation, we are entirely satisfied with the opinion delivered, as it now stands.

The petition for a rehearing is overruled.