Filed Sept. 24, 1885.

---

No. 11,754.

LOTZ *v.* SCOTT ET AL.

EVIDENCE.—*Expert.*—*Hypothetical Case.*—Where a hypothetical case, covering the leading facts testified to, and practically admitted, is stated to a witness shown to be an expert, his opinion, based on such hypothetical case, is proper evidence.

SAME.—*Damages.*—*Adjoining Owners.*—In an action for damage to the wall of a building, caused by the drippings from the eaves of an adjoining house, evidence that the bad condition from dampness, if such was their condition, of other brick walls in the immediate vicinity, against which there were no drippings from the eaves of adjoining houses, is admissible.

ESTOPPEL.—*Adjoining Buildings.*—*Damages.*—Where the owner of a building extends his building over onto an adjoining lot, on which a house is already standing, such owner will not be heard to complain that his neighbor's house is too close, or in injurious proximity to his building.

From the Sullivan Circuit Court.

*J. T. Hays, H. J. Hays, W. S. Maple, W. C. Hultz* and *J. C. Chaney,* for appellant.

*S. C. Coulson, J. S. Bays* and *J. C. Bays,* for appellees.

NIBLACK, J.—The controversy which resulted in the bringing of this action arose out of substantially the following state

of facts: In-lot No. 45, of the town of Sullivan, in this State, fronts on the north side of the public square of that town. Some time, perhaps several years, previous to 1863, a frame house, about forty feet long and twelve feet high, was built on a subdivision of that lot. This subdivision fronts twenty feet on the public square, and its west line runs back parallel with, and twenty feet west of the east line of the lot. The frame house had a shingle roof, sloping east on one side and to the west on the other, and did not cover all the subdivision of the lot on which it was erected. There was an open space of several inches between the west wall and the west line, so that the drip from the eaves on the west side fell upon this open space, that is to say, upon the strip of ground upon which the house was so erected. In 1863, Lotz, the appellant, became the owner of this frame house and strip of ground, and so continued to be at the time of the commencement of this suit. In 1871, another person built a brick house, about sixty-five feet long and thirty feet high, with the roof sloping to the north, on a subdivision of the above named in-lot No. 45, adjoining and immediately west of the subdivision upon which the frame house stood. The east outside wall of a brick building previously erected, and known as the Draper building, constituted the west wall of this new brick building. Early in the year 1881, the appellees, Charles Scott and Cynthia A. Carrithers, became the owners of the new brick house in question, the east wall of which was afterwards ascertained to be, on the west, or inside and lower part, in a damp, damaged and generally bad condition as the result of an apparent flow or accumulation of water from some source. The appellees, claiming that this damp and damaged condition of this east wall resulted from the drippings from the adjacent eaves of the frame building, commenced this suit against Lotz, as its owner, for damages, and for an injunction to restrain him from permitting the water to drip from the eaves of his house, to the injury of the appellees' building.

A temporary restraining order was granted, but before the cause came on for trial the frame building burned down. The circuit court, after hearing the evidence, made a finding for the appellees, assessing their damages at twenty dollars, and rendered judgment accordingly.

Questions were reserved below upon the sufficiency of the evidence to sustain the finding, as well as upon the admission and exclusion of evidence. The damp and damaged condition of the wall was a practically admitted fact at the trial. All the witnesses who had examined it testified to the wet and rotten condition of the plastering and papering in certain places. Some of the witnesses held and advocated conflicting theories as to where the water came from which inflicted the injuries complained of.

The theory of the defence was that the water came from the ground below in which the foundation of the wall was laid.

One Hubbard was called as a witness by the appellant. He testified that he had been a bricklayer and plasterer for thirty years continuously; that he was one of the contractors who had built the house belonging to the appellees; that he had also helped build all of the walls except two of the six buildings immediately west of the Draper building; that when he and his co-contractor caused the ground to be excavated for the foundations of the north, east and south walls of the appellees' building, water came out from under the Draper building, and those other buildings west, and filled up the excavations, so that the foundations of these walls had to be laid in water.

A hypothetical case, covering the leading facts testified to, and practically admitted, as above, was stated to the witness, upon which his opinion was asked as to what produced the dampness on the west, or inside of the wall of which the appellees complained. This question was accompanied by a statement that the appellant expected to prove by the witness that in his opinion the dampness came from below, and not

from the eaves of the frame house. But the circuit court refused to permit the question to be answered. Some inquiries as to the condition of the west wall, being also the east wall of the Draper building, were also excluded.

In our view of this case, these rulings restricted the appellant too much, and very materially, in his defence. Hubbard showed himself to be an expert in the matters of bricklaying and plastering, and nothing has been presented from which we can infer that the appellant was not entitled to his opinion as to what caused the bad condition of the wall. *City of Indianapolis* v. *Huffer*, 30 Ind. 235. The bad condition from dampness, if such was their condition, of other brick walls in the immediate vicinity, against which there were no drippings from the eaves of any house, also constituted circumstances which the appellant had a right to have considered by the court.

The evidence tended very clearly to establish the fact that the appellees' building lapped over onto, and appropriated, a small strip of the subdivision of ground upon which the frame house was at the time standing. Conceding that fact to have been satisfactorily established, as it seemingly was, we regard it as fatal to the appellees' right to recover in this action. It will not do to hold that the proprietor of a building may extend his building over on to his neighbor's ground, where a house is already standing, and then be heard to complain that his neighbor's house is too close, or in injurious proximity to his building. In any view which we have been able to take, the case is an unsatisfactory one upon the evidence.

Whether, when a person, building a house in close proximity to the drippings from the eaves of his neighbor's house, where such drippings naturally fall upon his neighbor's side of the partition line, is, or is not, bound to fend off against the injurious consequences which may result from the drippings, is a question not now before us, and hence is one upon which we express no opinion at the present hearing.

The judgment is reversed, with costs, and the cause remanded for further proceedings.

Filed Oct. 7, 1885.