The opinion of the court was delivered by
Poohé, J.
Plaintiff brings this suit in its capacity as a tax payer for the purpose of setting aside a contract made .between the city and the Louisiana Electric Light and Power Company, in May, 1887, to light the city with electricity for four years, beginning on the 1st of January, 1888. The grounds of attack, to be considered on appeal, are the following:
1. That the contract is null and void, because it violates the prohibition contained in Sec. 2448 of the Revised Statutes, which provides that “the police juries of the several parishes, and the constituted authorities of incorporated towns and cities in this State,, shall not hereafter have power to contract any debt or pecuniary liability without fully providing in the ordinance creating the debt the means of paying the principal and interest of the debt as. contracted.”
2. That the City of New Orleans had no power in law to enter into such a contract. The defence is 'practically a general denial, and the judgment on appeal'rejected plaintiff’s demand.
I.
A statement of the principal features of the contract is necessary to a proper understanding of the grounds of attack.
After the adoption of an ordinance on the subject and after public advertisement calling for sealed proposals to light certain portions of the city, therein designated, with electricity for a term of five years, and the lowest bid having been made by the Louisiana Electric Light and Power Company, the contract was executed between the city and that corporation, containing numerous stipulations not necessary to enumerate in this opinion. After fixing the rates to be *190 paid for each light to be established and operated under the contract, the following stipulation was agreed upon:
“And the said City of New Orleans hereby binds and obligates itself to make and set apart in its budget of expenses for each and ■every year during the continuance of this contract, a special appropriation, sufficient in amount to cover the provisions of this contract, ■and to set the same aside and to dedicate the same to the purposes .aforesaid.”
It would seem to us that a mere comparison of the language just transcribed within the terms of the prohibition contained in Section 2448 of the Revised Statutes, is the best as well as the shortest argument to show that the contract under discussion does not fall within the scope of the prohibition contemplated by the statute.
There is no stipulation or expression either in the contract or in the ■ordinance on which to ground the contention that the city thereby intended to contract a debt.
The agreement imports no absolute and binding obligation on the part of the city to pay any sum of money for a consideration preexisting or executed on the part of the obligee, which is of the essence of a debt. The obligation of the city for future disbursements in favor of the company is conditioned on the performance on the part of the latter of its part of the contract, a fact to be ascertained, under the terms of the contract itself, from month to month.
Although the eventual disbursements to be made by the city may amount to several hundred thousand dollars, it is certainly not correct to argue that the effect of the contract was to place it in debt to that amount.
If under the terms of the contract the company furnishes and operates in quality and quantity the lights contemplated and agreed upon, and if payments are made therefor by the city from month to month, as stipulated in the contract, the city would certainly never be in debt to the company. Hence we conclude that no indebtedness was contemplated to flow from or was created by the contract.
These considerations find their support not only on reason and logic, but also on authority derived from adjudications of courts of last resort. Weston vs. Syracuse, 17 New York Reports 110; Valparaiso vs. Gardiner, 7 An. and Eng. Corporation Cases 626.
Of course, in thus contracting the city incurred pecuniary liability, just as a natural person becomes liable in purchasing goods or com *191 modities, or in securing the privilege by use or consumption of any needed object, thing or commodity. And the liability becomes ex-igible from month to month, as the lights contracted for are shown to have been furnished and operated by the company. But the very stipulation which creates the liability is in itself a provision of the means of paying the same.
As it appears from the stipulation hereinabove transcribed, the city obligates itself to annually provide in its budget the means of discharging its pecuniary liability under the contract for each ensuing year.
How else could the city have possibly provided for the means •necessary to pay for its annual supply of gas or of any other needed and indispensable commodity but out of its annual revenues and by means of a budget framed in accordance with the positive mandate •of the law?
We know of no other mode, and we have been referred to none. It is useless to refer to, or to analyze, for the purpose of distinguishing the difference existing in the decisions quoted by plaintiff’s counsel on this point of the case. They refer to bonds, notes and other obligations, evidences of indebtedness, not part, but clearly outside, of annual expenditures of city revenues for necessary annual costs of municipal governments. They can have no possible application to a case involving a contract for lighting a city, and the mode •of paying for the same. Hence we feel safe to conclude that the contract under discussion is not amenable to the prohibition contained in Sec. 2448 of the Revised Statutes. Oole vs. Shreveport, 41 An.
II.
On the question of the alleged legal incapacity of the city to make the contract herein assailed, the contention seems to be restricted to its want of power to make, what is known in jurisprudence as a time contract, or a contract for its supply of light for more than one year.
The municipal authority to contract for a supply of light is derived from the charter generally designated as Act No. 20 of 1882.
See. 7 reads:
“ The council shall have power, and it shall be their duty to pass such ordinances, and to see to their faithful execution, as may be necessary and proper, * * * to light the streets, wharves, landings and public squares.”
*192 That clause of itself contains no limitation or restriction to the’ power therein conferred in general and sweeping terms. But the argument is that the restriction is to be found in Secs. 63 and 64 of the charter. . The first of these sections requires the council to meet in December of §ach year for the purpose of levying an annual and' uniform tax, and of regulating licenses.
The other clause has reference to the annual budget of revenues, and expenses, and prescribes the time and mode of making and publishing the same.
It is clear that neither can be fairly construed as importing or . even inf erring the prohibition contended for by plaintiff’s counsel. It is evident that the contract under discussion was framed with special reference to the legal requirements contained in these very sections.
By entering into a contract for more than one year for a commodity or other supply, the Oity Council is not amenable to the charge that it restricted its legislative power.
The power to legislate conferred to the city by its charter has reference to its authority to legislate for governmental functions, such as passing and enforcing ordinances to govern itself and others,, under what is known as its police power; and it is distinct from the power to contract, which is similar in its effects to the right of contracting as exercised by natural persons. Hence the rules of law and the principles settled in jurisprudence, which prohibit municipal corporations from legislating future restrictions to its own legislative-power, are not applicable to a time contract entered into by such a corporation.
These views find sanction and ample support from the numerous-decisions rendered by courts of last resort in our sister States on precisely similar questions. See Indianapolis vs. Gas Light Co., 66 Ind. 396; Weston vs. Syracuse, 17 New York 110; City of Valparaiso vs. Gardner, 97 Indiana 1; Atlantic Water Works vs Atlantic City, 15 Am. & Eng. Cor. Cri. 327.
The rule as established by jurisprudence seems to be that, in the-absence of special legislative prohibition or restriction, a municipal corporation, vested with a general power to make a contract for the supply of gas or any other commodity has the right to make it according to its own discretion as to its prudence or good policy, within the limits of its franchise, including the power to make it for more- *193 than one year, if by thus contracting it believes that better terms or lower rates can be obtained.
After a thorough examination of our legislation on the subject, and an exhaustive study of our own reports, we find no law, reason or authority which would justify us in removing the present case from the effect of this general rule.
Great reliance is placed by plaintiff’s counsel on the decision in the ease of Garrison vs. City of Chicago, 7 Bissell, p. 480, in which the court refused to enforce a time contract for gas, made by the City of Chicago. But the law governing that contract affords an easy mode of distinguishing the leading features from the case now under discussion.
That decision was considered in the Indianapolis case herein -quoted, in which a time contract for gas also was judicially recognized as legal. We can make no better answer to the contention here than by quoting the following language from the Supreme Court of Indiana: “That ease, relied upon by the appellant’s counsel, does not seem to us to support their views. That was upon a contract made by the gas company with the city of Chicago to furnish the city gas for ten years. At the time that the contract was made * * * the charter of the city contained a provision that no contract should be made by the city involving any expense, unless an appropriation was previously made to meet it; and the comptroller was required in May of each year to submit an estimate of the amount necessary to defray the expenses of the city for the current fiscal year. No such appropriation was previously made, and the court puts the case expressly on that ground in the following words: “The question to be determined is whether there was a reasonable necessity on the part of the City Council to extend the contract in controversy here, and which will now be mentioned, for ten years of its date, there being no appropriation made commensurate With the obligations of the contract.”
We note the warning, by way of argument of plaintiff’s counsel, against the danger of such power in the hands of a city council, and of the imminent abuse of the same. But when the the power is once shown to exist in the municipal corporation, courts are powerless to regulate its exercise or to dictate what particular contract should or not be made or justified. It was under that rule that this court de *194 dined to examine the wisdom or reasonableness of the contract assailed in the recent case of Conery et al. vs. New Orleans Water Works Company and City of New Orleans, not yet reported.
The necessity of restrictions to the contracting power of municipal corporations is of the province of the legislative, and not of the judicial, department of the State government.
Judgment affirmed.