Moore, J.
But little contest is made as to the facts, and they may be briefly stated. What is now known as the Wabash Railroad was first operated in about the year 1856. ' The line of road passed through Defiance county, the defendant, the city of Defiance, being situated upon the line. In constructing the railroad near the town of Defiance, it crossed what were known as the Holgate pike and Brunersburg road. These were state or county roads, and a short distance from where the railroad crosses each of them, they unite, forming an acute' angle. The distance at which they are apart at the points crossed by the railroad is some two hundred feet. The distance from the railroad crossing to the point of intersection is about seventy feet.
The railroad along its line where it crosses these two roads is at a grade about eleven or twelve feet below the surface of the ground. And at each crossing a bridge was constructed passing over the railroad, and until the year 1887, these bridges were at an elevation above the grade of .the railroad of sixteen feet ten inches. Some time after the construction of the railroad, and long prior to the year 1887, the territory through which the railroad passed and was crossed by these two public highways, became a part of the city of Defiance, and was in the year 1887, and is now within the territorial limits or such city.
*29 The plaintiff, The Wabash Railroad Company, is the successor of the original corporation, and is entitled to all the franchises possessed by it, and that have been acquired by intermediate owners.
On the 26th day of December, 1887, the council of the city of Defiance duly passed the following ordinance :
“ An Ordinance. — Permitting the Wabash, St. Louis and Pacific Railway to construct bridges at Holgate pike and Brunersburg road.
“ Section 1. Be it ordained by the council of the city of Defiance, Ohio, That the Wabash, St. Louis and Pacific Railway Company is hereby authorized to erect new bridges over and across the track of the railway of said company where the same crosses the public streets in the Third ward of said city, known as the Brunersburg road and Holgate pike, provided said bridges shall be of good subtantial construction, placed in the center of said streets, eighteen feet wide roadway, with good and substantial sidewalks eight feet wide on each side of said bridges with proper railings on each side of said walks, said bridges and side walks to be at all times kept in good order and repair by said company. And said railway company is hereby further authorized to construct each of said bridges of sufficient height to give a distance of twenty-one feet in the clear between the tops of the rails of said railway at its present grade and the bottom of the floor beams of said bridges, provided always that said company shall provide and construct good and sufficient approaches and grade to each of said bridges, and extend the same to sufficient distance to give a grade of not to exceed one and one-fourth inches to the foot, and to conform to the width of the present streets, said grade to be made firm aud solid by either stone or gravel at the option of said company, provided that if gravel be used,, said city will permit it to be taken from their gravel bed without charge, and to construct and keep in constant repair good and proper approaches to said sidewalks, and brought to the proper level of the present walk by broad, safe steps where the grade would be too great for a safe incline, all to be done to the approval of the city, and all to be kept in repair to the extent of said compañas right of way, at all times by said company.
“ Section 2. The entering of the work of constructing said *30 bridges by said company, shall be taken as an acceptance oí the terms thereof by said company, and shall be regarded as superceding any contract or agreement heretofore existing between said company and said city as to either of said bridges. _
_ “ Section 3. This ordinance shall take effect and be in force from and after its passage and due publication.
“Done at the council chamber in regular session,this 20th day of December, 1887. — Attest, James A. Kitchel, City Clerk.”
The Wabash, St. Louis and Pacific railway Company was at the time of the passage of the ordinance, in the hands of a receiver. The receiver proceeded to accept the conditions imposed by said ordinance, and caused the bridges, approaches and sidewalks to be erected as provided. Afterwards, the Wabash, St. Louis and Pácific Railway, with all its right, property and franchises, was sold at judicial sale, the said purchaser thereof being the plaintiff, which said plaintiff ever since and does now own the same. That the plaintiff since it has become possessed of the said property and rights, has maintained said bridges, approaches and sidewalks as provided for in the said ordinance.
By the provisions of this ordinance the railroad company was permitted to and did elevate the bridges to the height of twenty-one feet above the grade of the railroad, and about ten feet above the level of the surface of the earth at the points where they cross the railroad track. The Brunersburg road is now named Ralston avenue, and the Holgate pike is named Clinton street.
On the 6th day of February, 1893, the city council of the city of Defiance passed two ordinances, one to improve Ralston avenue, and the other to improve Clinton street. Without reading these ordinances, it is enough to say that each of said streets is to be cut down so as to cross the railroad at grade.
The ascent from the railroad in each direction on Clinton street will be about four and one-half feet per one hundred *31 feet, extending sonth-easterly two hundred feet and northwesterly three hundred feet, and on Ralston avenue five feet to the hundred feet, extending south for two hundred feet, and about three feet per each hundred feet extending north a distance of three hundred and fifty feet. Such improvement is to be made at the expense of the city. These ordinances were passed in pursuance of the resolutions of the city council, passed September 11,1892, declaring the necessity of the improvements. The plaintiff was duly served with notice of the passage of the resolutions, and made no claim for damages.
Under the facts briefly stated, the plaintiff seeks to enjoin the defendant from enforcing the ordinance lowering the grade of the two streets named, and from in any manner taking down and destroying the over-head bridges, approaches and sidewalks leading thereto.
If the question were one in which alone the expediency of changing the street crossings was to be determined, it could be readily disposed of. That crossing at grade is much more dangerous than over-head crossing, goes without questioning.
Under the conditions as they exist at these crossings, both the streets and railway track passing through deep cuts near the intersection, renders the crossing at grade much more dangerous and unsafe than the ordinary grade crossing, and we must express surprise that a city council composed of intelligent gentlemen, should determine in favor of the change provided for by the ordinances passed in 1893. The city council, however, has determined that the improvement of the streets and change of grade is necessary, and by ordinance provided that such streets be so improved.
The sole question then, is whether under the facts existing, the city has the right which it claims to have, and which it is about to exercise, to so improve the streets as to cross the railroad tracks at grade. If the city council had such power or right, theu whether it was exercised as the court would have done, is immaterial That is, the court cannot control the legislative discretion of the city council.
*32 Section 2640, Revised Statutes, provides: “The council shall have the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public grounds and bridges within the corporation, and shall cause the same tobe kept open and in repair, and free from nuisance.”
A claim is made that the Holgate Pike (now Clinton street) and the Brunersburg Road (now Ralston Avenue) are county and state roads, under the control- of the board of county commissioners. This position is not tenable. The Supreme Court have held in Steubenville v. Kiny, 25 Ohio St. 610:
“ Where territory, including a public road, connecting with the streets of a city, is annexed to the city, and the road continues to be used as a street or thoroughfare, it thereby becomes a public highway of the city within the meaning of this section, (section 2640), although it has never been ‘ accepted and confirmed by an ordinance specifically passed for such purpose,’ as provided in section 2650.”
Section 4906, referred to by counsel, applies only to improved roads, and has no relevancy to this case.
So, that the roads in question being within the territorial limits of the city of Defiance, are streets within the meaning of section 2640, and are under the care, control and supervision of the city council.
Again, it is claimed that under sec. 3283, the ordinance passed in 1887, authorizing the receiver to construct the bridges over the railroad, was a contract between the city and receiver, to whose rights this plaintiff has succeeded, that is equally binding on each of the parties, and which the city can not, by ordinance or otherwise, disregard and violate. That the plaintiff’s rights under it have vested by a performance of the contract, which rights being beneficial to the plaintiff, cannot be disregarded by the city. That the plaintiff' should be protected in what it acquired" under the contract.
Section 3283 reads as follows :
“ If it be necessary; in the location of any part of a railroad, to occupy any public road, street, alley, way, or ground of *33 any kind, or any part thereof, the municipal or other corporation, or public officers or authorities, owning or having charge thereof, and the company may agree upon the manner, terms, and conditions upon which the same may be used or occupied; and if the parties be unable to agree thereon, and it is necessary, in the judgment of the directors of such company, to use or occupy such road, street, alley, way or ground, such company may appropriate so much of the same as may be necessary for the purposes of its road, in the manner and upon the same terms as is provided for in the appropriation of the property of individuals; but every company which lays a track upon any such street, alley, road, or ground, shall be responsible for injuries done thereby to private or public property lying upon or near to such ground, which may be recovered by civil action brought by the owner, before the proper court, at any time within two years from the completion of such track.” ■
This section gives the right to the railroad company to contract with the city for the right to use the road, street or public alley for its purposes, that is, to lay its track along the street, and the manner, terms and conditions upon which such street, etc., may be used. It does not, however, abridge or limit the right vested in the city in the care, supervision and control of the streets, as provided by section 2640. It gives the right to contract with the city as to what part of the streets it, the railroad, shall occupy, the manner in which its track stall be graded, ballasted, or provided with filling for crossings, etc., but not the right to limit the mode in which the city shall grade or use its street. Another section, section 3324, provides for crossings. The city cannot, by contract, barter away its legislative power, its right to change the grade of its streets, and the manner in which they shall be improved. Nor do we think that section 3283 is intended for such purpose. That the plaintiff has the right to occupy the street by laying its track across it is clear, and that the city has the right to cross the street at grade, or by over-head bridges, is equally as clear. The conditions may materially change, the necessity to change the grade of the street may exist, and the *34 right to make such change and determine the grade is vested in the city council, and its action is not to be controlled by the courts, nor can it be abridged by contract..
The city, by permitting the railroad company to cross its street, did not part with its right to control such street, for without some special legislative authority, it cannot, make any such grant to a railroad company, if the effect of sueh grant would be to relinquish its own control over such street. The privilege of a railroad company to lay its track across a street, must be exercised in common with the general public. The streets are held in trust for the public use, and are public for all purposes, for free and unobstructed travel. For those purposes a city may improve and control them, and the power to do so is, in Ohio, vested in the city council.
To sustain the position I have attempted to briefly state, I refer to but few authorities. I read from Dillon’s Municipal Corporations, section 686 : “That .the power to grade and improve streets, like other legislative powers, is a continuing one, unless the contrary is indicated, has been frequently decided by the federal and state courts. It may therefore be exercised from time to time as the wants of the public may require. Of the necessity or expediency of its exercise, the governing body of the corporation, and not the courts, is the judge.”
The same author, section 97, says : “Powers are conferred upon municipal corporations for public purposes ; andas their legislative powers cannot be delegated, so they cannot, without legislative authority, express or implied, be bargained or bartered away. Such corporations may make authorized contracts, but they have no power, as a party, to make contracts or pass by-laws which shall cede, away, control or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties.”
In the ease of Indianapolis v. Indianapolis Gas Co., 66 Ind. 396, the court say : Contracts to violate the charter, or to bargain away or restrict the free exercise of legislative discre *35 tion, vested in a municipality or its officers in reference to public trusts,are void.” The City of Defiance, as we haveseen, has the control, care and supervision over the streets that have come within its territorial jurisdiction by annexation, as it has of the streets that were within its original boundary. The improving and grading of streets is within the legislative discretion of the city council, and such legislative discretion cannot be contracted away. It is not a subject of bargain or barter.
Again, referring to Dillon’s Municipal Corporations, section 94, the author says : “ Thus, where the law or charter confers upon the city council or local legislature power to determine upon the expediency or necessity of measures relating to the local government, their judgment upon matters thus committed to them, while acting within the scope of their authority, cannot be controlled by the courts. In such case the decision of the corporate body is, in the absence of fraud, final and conclusive, unless they transcend their powers. Thus, for example, if a city has power to grade streets, the courts will not inquire into the necessity of the exercise of it, or the refusal to exercise it, nor whether a particular grade adopted, or a particular mode of executing the grade is judicious.”
It is a general and fundamental principle of law, that all persons contracting with a municipal corporation, must at their peril inquire into the power of the corporation or its officers to make the contract; and a contract beyond the scope of the corporate power is void.
The city of Defiance had no power to contract away or restrict by contract the free exercise of its legislative discretion. The Railroad Company knew, or it is held to have known, when it erected the bridges making the overhead crossings, that the city had no such power.
The plaintiff has cited the court to the case of The Phil., Wilmington & Balt. R. R. Co. v. The City of Chester, decided by the Supreme Court of Penusylvania, and reported in 15 At. R. The syllabus reads : “Defendant agreed to es *36 tablisb the grade of a street, about to be opened eighteen feet above plaintiff's track, to facilitate the operation of trains under the street, and plaintiff agreed to construct a bridge over its track. Held : That the contract, was within the act of Pa., March 12, 1873, authorizing defendant to grant to plaintiff the use of its street, whether opened or tobe opened, and defendant could not remove the bridge and change the. crossing to a level grade.''
The court say in its opinion : “The act of March 15, 1873, (Pa. L. 376), contains in the concluding clause, the following provision: “Such grants as aforesaid, when made and approved by ordinance of the mayor and council, shall be as valid and effectual to transfer the rights and privileges therein contracted for to the said companies, or any of them, or any of their successors and assigns, as if made between individuals ; and the mayor and council of said city shall have power to enact ordinances from time to time as they may deem advisable and expedient for the purposes of this act. The contract was approved by ordinance as provided August 17, 1874.''
The case is to be distinguished in two respects from the one under consideration.
First. — By express act of the legislature, the city was authorized to make the contract.
Second. — Under such express authority, the city contracted with the railroad company, that it would establish the grade of its street eighteen feet above the track. It was a street to be opened across the track. No express authority is given by the statutes of Ohio, to make such contract as exists in the Pennsylvania statute.
Again, if such power was granted, the city of Defiance never contracted with the Railroad Company, that it would establish the grade of its street so as to make an overhead crossing. All it did do was to authorize or permit the receiver of the railroad company to build overhead bridges. So we see the case cited has but little, if any, application to the case at bar.
*37 It is further claimed, as averred in the petition, that further grading down of said highways as proposed by said ordinances will be an appropriation of the plaintiff’s property, and will also cast an additional burden upon the plaintiff in the establishing and maintaining of new grade crossings over its said track, for which no compensation has been provided in money for the plaintiff, and no tender thereof made to the plaintiff, and the failure so to do is in violation of the constitution of the state.
The city is not attempting to appropriate any of the property of the Railroad Company. The right of the Company is only to lay its track across the street; other.than that, it has no right in the street; with that right the city in the exercise of its power does not propose to interfere. The statute of the state provides, that every person or corporation operating a railroad shall maintain safe and sufficient, crossings at every highway and street where such railroad shall cross the same. It would therefore, necessarily follow, that such crossing must conform to the grade of the highway or the street, as determined by the authorities having the care and control of. the same. It would be unreasonable therefore to claim that because the grade of the street is now established, the city would have to condemn the property of the railroad in crossing. It is fortunate in Ohio that railroad companies do not own the streets; that they can have but an easement in them. The city is not extending its streets across this railroad. It is simply in the legally authorized manner trying to improve its own property. The railroad company w'as required by the statute to make the crossings, which by the permission of the city council, it did by the overhead bridges. These were for public use, and not the private use of the railroad company. These bridges were public property, and even if the bridges were to be considered as private property belonging to the railroad company, they were placed upon the public street subject to be removed, when the public through its authorized agent, the city council, so determined. The city now, for the *38 first time, lias established the grade of these streets. The railroad company can have no higher or better right than abutting lot owners upon such streets. The Supreme Court has held in the case of the City of Cincinnati v. Grove J. Penny, 21 Ohio St. 499: “As a general rule a municipal corporation is not liable for injuries to buildings or lots, abutting streets and alleys, resulting from the improvement of such streets or alleys, or from their appropriation to a public use, provided its officers and agents in making such improvements or appropriation, act within the scope of their authority, and without negligence or malice.”
In The City of Akron v. The Chamberlain Company, 34 Ohio St., the Supreme Court again hold : “ The owner of a lot abutting on an unimproved street of a city or village, in erecting buildings thereon, assumes the risk of all damage which may result from the subsequent grading and improvement of the street by municipal authorities, if made within the reasonable exercise of their power.”
While these decisions are not directly in point, they establish the principle that where an owner of property abutting upon a street where the grade has not been established, makes improvements thereon, he does so at the risk of the injury that may result to his property, when the grade of the street is made under a reasonable exercise of the power vested in the municipality; and it is said that whatever latitude there may be in the exercise of discretion in fixing the grade of a street, is lodged in the municipal authorities, and not in the lot owners. The conclusion, therefore, to be reached is that not only is the plaintiff in no situation to have a condemnation of any property it has in the overhead bridges, made by the city before it can proceed with its improvement, but that its right to recover damages for any injury resulting from making the improvement is very questionable. It is verj clear that the city is not seeking to appropriate any of the property of the plaintiff, and no injunction should lie because of such claim. If any damage should result to the rail *39 road company because of any act on the part of the city, an action at law would be the remedy, and nota suit in equity to enjoin a public improvement. The fundamental idea of a street-is not only that it is public, but public for all purposes of free and unobstructed passage, which is the chief and primary use. To say that the plaintiff had ^property rights in the overhead bridges so erected for crossing the tracks of the railroad, is inconsistent with the fundamental object and use of the streets.
When the city has determined upon the improvement of a street, it can remove whatever is within the street to accomplish such object. And, although the fee of the street may be in the adjoining lot-owner, the city in grading'the street may remove the soil, and use it in improving that street or any other street in the city. This right includes the right on the part of the city to dispose of the soil to others who will remove it. Or, if the adjoining owner does not remove the soil, the city may sell and dispose of it any Avay it deems proper.
The plaintiff has no right in the fee. It has no reversionary interest in the real estate. The bridges, when erected, became a part of the streets for public use and for free and unobstructed travel. They being within the streets are subject to removal, the same as if originally erected by the public. The fact that the city permitted the railroad company to make such crossings, did not divest the city of any of its right of ownership or control of the streets. If, perchance, the railroad company should be held to own the material of which the bridges are built, it will be time for it to complain when the city has converted such personal property, and seek its remedy either in replevin or for damages, for the injury it may sustain.
It is claimed that the railroad company will be at the mercy of the city council. If the city council establishes its grade, and a crossing is made to correspond thereto, it cannot afterward require the railroad company to expend money for *40 another different crossing. It can lay no further burdens upon the railroad company. And if the city should seek to change its grade to an overhead crossing, it could'not do so at the expense of the railroad company.
Alex. L. Smith and Henry Newbegin, for plaintiff.
W. H. Hubbard, City Solicitor, and B. B. Kingsbury, for defendant.
The plaintiff's petition will be dismissed with costs.
Day, J., concurs.
Sjgney, J., dissents.